STATE, TOWNSHIP OF BLOOMFIELD, PROSECUTOR, v. PHILANDER S. PIERSON, COLLECTOR OF THE COUNTY OF ESSEX.

1. If an assessor of taxes attend the meeting of the assessors of the several townships and wards in the county, and produce his duplicate but refuse to make affidavit thereto, the majority of the assessors convened shall estimate the value of the property liable to assessment in his township or ward, according to the best of their information and belief. *Rev., p.* 1155, ¿ 121.

2. Where, in such case, the assessors added $100,000 to the assessor's valuation of real estate in the township, it will not be adjudged, in the absence of proof, that they acted arbitrarily, but according to the bes of their information and belief.

3. Assessors acting as elected representatives of the townships and wards at such meeting held to be officers *de facto*, and their acts valid so far as the rights of the public and third persons are concerned.

On *certiorari*. In matter of taxation.

Argued at February Term, 1885, before Justices DEPUE, VAN SYCKEL and SCUDDER.

For the plaintiff, *H. N. Barret.*

For the defendant, *J. W. Taylor.*

The opinion of the court was delivered by

SCUDDER, J. This writ of *certiorari*, by the inhabitants

of the township of Bloomfield, in the county of Essex, against the collector of that county, brings up for review a certain increase in the valuation of taxable real estate in the township of Bloomfield, in the year 1884, made by the board of assessors of the county, whereby an addition of $100,000 was made in such valuation. The facts returned and proved by affidavits and exhibits show that the Essex county board of assessors held its annual meeting at the court-house, in Newark, July 28th, 1884, and that the returns of valuations in the wards and townships of the county were made by the respective assessors. The assessor of the township of Bloomfield produced his duplicate of the value of real and personal estate to be by him assessed, but did not add an affidavit that he had valued the property at its full and fair value, and in conformity with the statute. When requested to make such affidavit by the board, he refused to do so, and admitted that he had made the valuation too low. When asked how much too low it was, he said it was not high enough by about forty per cent. It was estimated that forty per cent. added would increase the taxable property $800,000. The chairman of the meeting, who was examined as a witness, says that they did not add $800,000 to the valuation, but that the members thought "that Bloomfield was just a little bit too low, compared with the other townships," and the minutes show that on motion it was carried that the valuation of the real estate of Bloomfield be increased $100,000. ·

Three reasons are assigned for reversal of this increased valuation. First, that the board of assessors did not proceed in the manner required by the statute to enable them to act in the premises. Section 12, (*Rev.*, *p.* 1155,) after providing for the annual meeting of the board of assessors and the production of their duplicates and affidavits, says in the last clause: "And if any assessor shall be unable to attend at such meeting, it shall be his duty to send his duplicate with the affidavit aforesaid, and in case any assessor neglecting to attend, or to produce or send his duplicate and affidavit aforesaid, the majority of the assessors convened shall estimate the value of

the property liable to assessment in the township or ward of the absent assessor, according to the best of their information and belief." There is an inaccuracy in this clause, which makes it appear that the case of an absent assessor only is provided for, but the former part shows that this is a mere attempt at repetition which does not include all the previous members of the sentence, and the obvious meaning is that the board may act not only where the assessor is unable to attend the meeting, but in case of any assessor neglecting to attend, or to produce or send his duplicate and affidavit. If he neglect to produce or send his duplicate and affidavit, the majority of the assessors convened shall estimate the value. In this case the assessor of Bloomfield attended and produced his duplicate, but not the affidavit, and the case was within the intent of the statute.

It is also said that the estimate made by the assessors was wrong because the statute says it shall be the value of the property liable to assessment in the township or ward—that is, all of the property, real and personal, liable to assessment—but the assessors added $100,000 to the valuation of real estate only. In the words of the act, they are to make the estimate according to the best of their information and belief. Suppose it appeared to them that the assessment of personal property was high enough, but that the real estate was undervalued in comparison with the valuation of real estate in the other townships and wards, and that some addition should be made to equalize it, there would be no error in the increase. It is well known that while the constitution requires that property shall be assessed according to its true value, and personal property is usually thus estimated when found, there is a constant effort to undervalue real estate, and two-thirds or three-fourths, or some other measure, is often taken instead of its true value. If the assessors, believing the assessor of Bloomfield had overstated his undervaluation at the sum of $800,000, but thought the main deficiency was in the value of real estate, and added the comparatively small sum of $100,000, who can say, in the absence of proof, that any injustice has been done

thereby? Without such proof there should be no presumption against the acts of these public officers, who do not appear to have acted arbitrarily, but according to the best of their information and belief, and liberally towards the taxpayers of the township, according to the statement of their assessor. It further appears that the return of valuation for the year 1884 was from $25,000 to $30,000 less than the preceding year. There must have been other facts brought to the knowledge of the board, for the chairman testifies that when the assessor of Bloomfield refused to take the prescribed oath he gave as a reason that it would not be correct, and went on to make some other statements, and that, he says, is what led him—and he presumes others—to vote for the increase. The mere fact that they put the increase wholly on real estate is not necessarily wrong.

The further objection, that the assessors did not proceed according to section 13 of the act, is not relevant, for the writ of *certiorari* only brings up the increase of tax under section 12, and not the adjustment of the proportion or quota of tax to be levied, which is provided for in section 13, as amended by the act of 1883. *Pamph. L., p.* 192. These considerations also dispose of the second reason for reversal, that the resolution of the assessors was without lawful authority. The third reason, that the board of assessors was not lawfully constituted, has no force. The assessors assembled, and, acting as a board of assessors, were the elected representatives of the several ward and townships of the county, and as officers *de facto* could act in estimating the value of property liable to assessment. Whether they were officers *de jure* will not be determined in these proceedings, in which the assessors are not parties. Their acts are valid so far as the rights of the public and third persons are concerned. *State* v. *Tolan*, 4 *Vroom* 195, 201; *State* v. *Collector of Ocean*, 10 *Vroom* 75; *Clark* v. *Ennis*, 16 *Vroom* 69, 76.

The resolution of the board of assessors increasing the valuation of taxable real estate will be affirmed, with costs, including cost of printing.